## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

Garey Smith,
    Petitioner

vs.

                                 Case No. 1:04cv579
                                 (Weber, S.J.; Hogan, M.J.)

Warden, Southern Ohio
Correctional Facility,
    Respondent

## REPORT AND RECOMMENDATION

Petitioner, a prisoner in state custody at the Southern Ohio Correctional Facility in Lucasville, Ohio, commenced the instant habeas corpus action in August 2004 to challenge his retrial before the Hamilton County, Ohio, Court of Common Pleas, after the Ohio Court of Appeals reversed his first conviction on direct appeal. Petitioner, who was incarcerated at the Hamilton County Justice Center at the time, filed the petition prior to commencement of the second trial, claiming a violation of his double jeopardy rights based on the prosecutor's "egregious misconduct" in the first trial.[1] (Doc. 1, p. 5).

Petitioner was retried and convicted in October 2004. In March 2005, the Court stayed the instant action pending petitioner's exhaustion of state court remedies that were still available to him. (*See* Docs. 20, 32, 33). In February 2006, in response to a motion to alter or amend judgment filed by respondent (*see* Doc. 34), the Court dismissed the petition without prejudice to refiling after petitioner exhausted his then-pending state court remedies. (Doc. 38).

---

[1] Petitioner also claimed in the petition that his right to reasonable pretrial bail was denied. (*See* Doc. 1, p.5). However, that claim was rendered moot by petitioner's subsequent conviction and sentence at the second trial. (*See* Doc. 20, p. 6; Doc. 32).

Petitioner appealed to the United States Court of Appeals for the Sixth Circuit, which issued an Order on April 13, 2007 vacating the Order of dismissal without prejudice and remanding the case to this Court "for further proceedings," because as respondent had conceded, "the record indicates that . . . exhaustion has now been achieved." (Doc. 41). The case was reinstated on this Court's docket on October 18, 2007 after the Sixth Circuit entered its mandate on October 16, 2007. (Docs. 43, 44).

In November 2007, petitioner filed another *pro se* habeas petition challenging his conviction and sentence imposed at the second trial, which is docketed as Case No. 1:07cv977 (Dlott, J.; Black, M.J.).[2] The Court granted petitioner's request for appointment of counsel in the instant action only. (Doc. 55; *see also* Case No. 1:07cv977 (Docs. 5, 16)). Thereafter, the Court entered an Order in both habeas cases requiring the parties to show cause why the cases should not be consolidated. (Doc. 57; Case No. 1:07cv977 (Doc. 6)). On February 7, 2008, the Court declined to consolidate the cases for the reasons set forth in a supplemental response objecting to consolidation, which was filed by petitioner's counsel in this case. (Doc. 64).[3]

At this juncture, the double jeopardy claim alleged in the instant pretrial petition filed in August 2004 appears ripe for disposition.

Presently pending before the Court for consideration in assessing the merits of this claim are the petition (Doc. 1); respondent's return of writ filed in accordance with this Court's October 18, 2007 Order reinstating the case (Doc. 62); petitioner's "traverse" in response to the return of writ (Doc. 68); respondent's "reply" to petitioner's "traverse" (Doc. 71); and petitioner's supplemental memorandum filed on November 3, 2008 in accordance with an Order entered October 1, 2008 granting petitioner leave to supplement the record and to file the supplemental memorandum (Doc. 74; *see also* Docs. 72, 73).

---

[2] In the later-filed post-conviction habeas petition, petitioner asserts as the first ground for relief various double jeopardy claims, including the one alleged in the instant petition based on prosecutorial misconduct at the first trial; petitioner also asserts three additional grounds for relief. Case No. 1:07cv977 (Doc. 1, pp. 7-11).

[3] Specifically, counsel contended in the supplemental response that because some of the claims alleged in the later-filed petition were still being litigated in the state courts, consolidation of the cases "would create a procedural quagmire that would unreasonably delay resolution of [petitioner's] already exhausted pre-trial claims, which are now ripe for a decision." (Doc. 61).

## Procedural Background

### A. First Trial: September 2002 Conviction (*Smith I*)

On May 24, 2001, the Hamilton County grand jury returned an eleven-count indictment charging petitioner with one count of aggravated murder in violation of Ohio Rev. Code § 2903.01(A) with death penalty specifications; three counts of attempted murder in violation of Ohio Rev. Code § 2923.02(A) with firearm specifications; six counts of felonious assault in violation of Ohio Rev. Code § 2903.11(A) with firearm specifications; and one count of having weapons while under disability in violation of Ohio Rev. Code § 2923.13(A)(2). (Doc. 62, Ex. 1). These charges stemmed from an incident on May 14, 2002, wherein petitioner shot and killed Jimmie Gordon and shot and seriously wounded three other victims – Jeffrey King, Steven Franklin and Andre Ridley. (*See id.*; *see also* Doc. 16, Ex. A, p. 2).

After a jury trial, petitioner was found guilty of the lesser offense of murder with specifications; two counts of attempted murder with specifications; all felonious assault charges with specifications; and the weapons offense. (*See* Doc. 62, Ex. 2). On September 17, 2002, petitioner was sentenced to an aggregate prison term of 47 years to life, with some of the felonious assault and attempted murder convictions merged for sentencing purposes to the extent they stemmed from charges involving the same victim.[4] (*See id.*).

Petitioner appealed to the Ohio Court of Appeals, First Appellate District. He asserted, among other claims of error, that the trial court erred by denying him his right to represent himself and that the prosecutor engaged in misconduct during closing argument. (*See* Doc. 16, Ex. A, p. 2). On January 23, 2004, the Ohio Court of Appeals reversed the convictions and remanded the case for new trial based on its determination that the trial court "effectively denied Smith's

---

[4] Specifically, for sentencing purposes, petitioner's two felonious assault convictions and attempted murder conviction with respect to victim Steven Franklin (Counts 2-4) were merged; petitioner's two felonious assault convictions with respect to victim Jeffrey King (Counts 5-6) were merged; and petitioner's two felonious assault convictions and attempted murder conviction with respect to victim Andre Ridley (Counts 8-10) were merged. (*See* Doc. 62, Ex. 2).

constitutional right to defend himself." (*Id.*, p. 14) ("*Smith I*"). In so ruling, the appellate court in *Smith I* commented on the prosecutorial misconduct claim only briefly as follows:

> We agree that the prosecutor's comments on the veracity of Smith, his admitted attempts to bait Smith into losing his temper, and his comments on facts not in evidence were improper. The prosecutor's actions under other circumstances may have provided a basis for reversal and the order of a new trial, but given our disposition of the first assignment of error, this issue has been rendered moot.

(*Id.*).

## B. Second Trial: October 2004 Conviction (*Smith II*)

### 1. **Trial Proceedings.**

It appears from the record that the case was returned to the trial court to conduct a new trial on the lesser charge of murder with specifications, as well as all other charges contained in the original indictment that had not resulted in an acquittal at the first trial.[5] (*See* Doc. 62, Ex. 3 & Ex. 3B, p. 2).

On June 22, 2004, petitioner filed a motion to dismiss the renewed criminal charges based on the prosecutor's misconduct in "maliciously misrepresent[ing] the facts in this case and intentionally withh[olding] discovery materials." (*See* Doc. 1, attachment). In a supplement to the motion to dismiss filed on July 6, 2004, petitioner cited specific instances of prosecutorial misconduct that had occurred at his first trial and argued in closing that he could not "receive a fair trial in Hamilton County, particularly with the same prosecutors on his case who have committed such blatant misconduct." (*Id.*). On July 14 and 19, 2004, petitioner filed additional pleadings in support of the motion to dismiss citing more examples of prosecutorial misconduct at the first trial and of "continued misconduct" by the prosecutor in preparing for the second trial. (*Id.*).

---

[5] Because petitioner was acquitted at the first trial of the attempted murder charge involving victim Jeffrey King, which was set forth in Count 7 of the original indictment, that count was excluded from consideration at the second trial.

Apparently, as found by the Sixth Circuit in its April 13, 2007 decision vacating the prior dismissal of the instant petition without prejudice, a hearing was held on the motion to dismiss, where petitioner argued that the prosecutor's misconduct constituted a "bar to retrial" based on "double jeopardy grounds." (*See* Doc. 41, p. 4). On August 10, 2004, the trial court summarily overruled the motion on the ground that it was "not well-taken." (*See id.*; *see also* Doc. 1, p. 4 & attachment).

Petitioner next filed the instant federal habeas petition, raising the claim of a double jeopardy violation based on prosecutorial misconduct in an effort to forestall his second trial. (*See* Doc. 1). However, the trial court went ahead with the criminal trial in October 2004, which culminated in a hung jury on the murder and attempted murder counts and petitioner's convictions on the remaining six felonious assault counts with specifications and the weapons-under-disability charge. (*See* Doc. 62, Ex. 3 & Ex. 3B, p. 2).[6]

On October 29, 2004, petitioner was sentenced to an aggregate prison term of 55 years and six months. Specifically, the trial court imposed consecutive prison sentences of eight years for each of the felonious assault offenses and 18 months for the weapons offense, as well as additional consecutive prison terms totaling six years with respect to the firearm specifications attached to the felonious assault counts. (*See* Doc. 62, Ex. 3).

## 2. Direct Appeal/Post-Conviction Proceedings.

Petitioner timely appealed his convictions and sentences imposed at the second trial to the Ohio Court of Appeals, First Appellate District. (*See* Doc. 62, Brief, p. 6). His appellate counsel filed a brief raising seven assignments of error,

---

[6] Apparently, the State thereafter moved to retry the murder and attempted murder counts that remained undecided after petitioner's second trial. The trial court dismissed the attempted murder charges but granted the prosecution permission to retry the murder count. (*See* Doc. 62, Ex. 3B, p. 2). In March 2005, following a third jury trial, petitioner was acquitted of murder. (*Id.*, Ex. 3F). Petitioner's retrial on the murder count in a third trial is not the subject of the instant federal habeas action. Therefore, this Court will not consider any pleadings or evidence pertaining to that trial, which may have been submitted in this case, in evaluating petitioner's claim of a double jeopardy violation in having to defend against the counts presented at his second trial.

including the following claims:

> **First Assignment of Error:** The trial court erred to the prejudice of Smith by denying his request for jury instructions on inferior offenses.

> **Third Assignment of Error:** The trial court erred to the prejudice of Smith by allowing him to be tried and sentenced in violation of the Double Jeopardy Clause of the United States Constitution and the Ohio Constitution.

>> **First Issue Presented:** Whether Smith endured multiple prosecutions and sentences for the same offense in violation of the Fifth Amendment of the United States Constitution and the Ohio Constitution.

>> **Second Issue Presented:** Whether the trial court violated R.C. 2941.25 by sentencing Smith to consecutive sentences on all six counts of felonious assault when only three victims were involved.

> **Fourth Assignment of Error:** The trial court erred to the prejudice of Smith by sentencing him to consecutive sentences.

> **Fifth Assignment of Error:** The trial court erred to the prejudice of Defendant-Appellant by imposing the maximum possible sentence on all counts.

(*Id.*, Ex. 4).

In addition, petitioner submitted a *pro se* pleading, which was attached to appellate counsel's brief, raising five more assignments of error, including the following claim:

> **Constitutional Violation V:** The Court violated Smith's right not to be twice placed in jeopardy when it denied Smith's motion to dismiss indictment due to prosecutorial misconduct which caused a violation of the Double Jeopardy [C]lause.

(*See id.*).

On July 21, 2006, the Ohio Court of Appeals issued a decision affirming in part and reversing in part the trial court's judgment. (*Id.*, Ex. 6) ("*Smith II*"). After considering all of petitioner's claims of error raised both in the brief filed by counsel and in the attached *pro se* pleading, the appellate court in *Smith II* overruled petitioner's assignments of error except as follows:

1. The court sustained the first assignment of error to the extent that "the trial court erred in not allowing the jury to consider the inferior-degree offense of aggravated assault where there was evidence that Smith was sufficiently provoked when he shot" one of the victims, Jeffrey King; therefore, the court held that petitioner was entitled to a new trial on the felonious assault charges involving the victim King that were set forth in Counts 5 and 6 of the indictment. (*Id.*, p. 20).

2. The court sustained in part the fourth assignment of error, as well as the fifth assignment of error in its entirety, because under the state supreme court's decision in *State v. Foster*, 845 N.E.2d 470 (2006), the imposition of "maximum, consecutive terms for the felonious assaults against Ridley and Franklin and for having a weapon under a disability" amounted to constitutional error; therefore, the sentences imposed on the remaining charges set forth in Counts 2, 3, 8, 9 and 11 were vacated and the case was remanded for resentencing on those counts. (*Id.*, pp. 26-27).

With the assistance of counsel, petitioner timely appealed to the Supreme Court of Ohio. (*See id.*, Ex. 7). He presented nine propositions of law in his memorandum in support of jurisdiction, including the following claims:

**Proposition of Law No. II:** Double Jeopardy prohibits retrial where prosecutorial misconduct is undertaken with the intention of denying the defendant an opportunity to win an acquittal.

**Proposition of Law No. V:** Defendant was subjected to Double Jeopardy when the trial court unmerged counts that had been merged at his original trial, tried him for these same counts, and imposed consecutive sentences.

**Proposition of Law No. VI:** Defendant was subjected to Double Jeopardy when he was tried twice and punished twice for the same conduct.

(*Id.,* Ex. 8).

On December 13, 2006, the state supreme court declined jurisdiction to hear the case and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 9).[7]

## C. **Remand/Re-Sentencing Proceedings (*Smith III*)**

On March 6, 2007, after the case was returned to the common pleas court for a new trial on Counts 5 and 6 and re-sentencing on the remaining counts pursuant to the Ohio Court of Appeals' decision in *Smith II,* petitioner's counsel filed a motion to dismiss "on the basis of double jeopardy." (*Id.,* Ex. 23). In addition, on March 13, 2007, petitioner's counsel filed "objections" to petitioner's "being resentenced on Counts 2, 3, 8, and 9, and . . . to retrial on Count 5," and moved to dismiss those counts. (*Id.,* Ex. 24).

On March 23, 2007, petitioner was re-sentenced to an aggregate prison sentence of 36 years, which consisted of: consecutive terms of imprisonment of eight years for the four felonious assault offenses charged in Counts 2, 3, 8, and 9 involving victims Steven Franklin and Andre Ridley; one year for the weapons offense; and three years for the firearm specifications attached to Counts 2, 3, 8

---

[7] It is noted that petitioner also sought to challenge his convictions and sentences at the second trial in a *pro se* petition for post-conviction relief, which he filed with the Hamilton County Common Pleas Court on August 12, 2005. (*See* Doc. 62, Ex. 10). The court denied the petition on May 22, 2006 on the ground that "[a]ll of the Petitioner's claims are barred by the doctrine of res judicata as they were or could have been raised on direct appeal. (*See id.,* Ex. 12). The Ohio Court of Appeals, First Appellate District, affirmed the trial court's judgment on June 8, 2007; the court reasoned that most of the claims were properly dismissed under the *res judicata* doctrine, and that the two remaining claims were properly dismissed without a hearing because they were not supported by sufficient outside evidence. (*Id.,* Ex. 16). On October 31, 2007, the Supreme Court of Ohio declined jurisdiction to hear the case on further appeal, and summarily dismissed the appeal "as not involving any substantial constitutional question." (*Id.,* Ex. 22).

and 9, which were merged for sentencing purposes. (*See id.,* Ex. 25). On April 17, 2007, an "Entry of Dismissal" was filed dismissing the felonious assault charges contained in Counts 5 and 6 and the firearm specifications attached to those counts. (*Id.,* Ex. 26).

Petitioner's counsel timely appealed the trial court's re-sentencing decision to the Ohio Court of Appeals, First Appellate District, asserting in the first assignment of error that the "trial court erred in imposing sentences of void counts that had been previously merged by the original trial court;" he further alleged in another assignment of error that "the trial court violated the United States and Ohio constitutional prohibitions against Double Jeopardy" because (1) multiple sentences were imposed "for the same conduct against a single person;" (2) petitioner was sentenced "on counts that had been previously unlawfully 'unmerged;'" and (3) "prosecutorial misconduct . . . at Smith's first trial" precluded his retrial on all charges. (*See id.,* Exs. 27, 28).[8]

On May 23, 2008, the Ohio Court of Appeals issued its third appellate decision ("*Smith III*"), affirming the trial court's judgment in part, vacating the sentences in part and remanding the matter for re-sentencing. (Doc. 72, Ex. A). Specifically, the court of appeals overruled petitioner's first assignment of error, finding that the trial court had "properly retried Smith on the previously merged counts in his second trial." (*Id.,* pp. 4-5). The court, however, sustained petitioner's double jeopardy claim to the extent that "in light of the recent Ohio Supreme Court decision in *State v. Cabrales,* [886 N.E.2d 181 (Ohio 2008),] the trial court erred by sentencing Smith on four felonious-assault counts when there were only two acts and two victims." (*Id.,* p. 6).[9]

---

[8] Apparently, in November 2007, petitioner also filed a petition for writ of habeas corpus in the Ohio Court of Appeals for Scioto County, where he is incarcerated, claiming that he was entitled to release from prison because the Double Jeopardy Clause and other provisions barred his retrial on counts that had been merged for sentencing purposes at his first trial. (*See* Doc. 74, Ex. 1). The court of appeals dismissed the petition, and on September 10, 2008, the Supreme Court of Ohio affirmed the court of appeals' judgment. (*Id.*).

[9] The State filed a timely appeal to the Supreme Court of Ohio from this decision. (Doc. 72, Ex. E). Upon review of the state supreme court's on-line docket records in that appeal, Case No. 2008-1308, it further appears that petitioner was permitted to file a delayed cross-appeal; recently, on December 15, 2008, petitioner filed a memorandum in support of jurisdiction in the cross-appeal. The appeal and cross-appeal are still pending before the Supreme Court of Ohio.

On August 6, 2008, petitioner was re-sentenced in accordance with the Ohio Court of Appeals' decision in *Smith III* to an aggregate prison term of 19 years. (*Id.*, Ex. L).[10] Specifically, the court merged the felonious assault counts involving victim Steven Franklin (Counts 2 and 3), as well as the felonious assault counts involving victim Andre Ridley (Counts 8 and 9); petitioner, therefore, was sentenced to only two consecutive eight-year terms of imprisonment for the felonious assault offenses, which were to run consecutively with the three-year concurrent sentences imposed for the attached firearm specifications.[11]

## OPINION

### A. Petitioner Is Not Entitled To Relief Based On The Double Jeopardy Claim Alleged In The Instant Petition Filed Prior To His Second Trial

In the petition, filed *before* petitioner's second jury trial commenced, petitioner claimed only that his double jeopardy rights were violated because the "prosecutors engaged in egregious misconduct in my first trial which has now tainted my retrial." (*See* Doc. 1, p. 5). Petitioner specifically alleged in support of this claim that the prosecutors at his first trial "suborned perjury and intentionally falsified evidence [,] . . . withheld material evidence . . . and failed to correct false testimony that they knew was untrue." (*Id.*).

The Ohio Court of Appeals, First Appellate District, was the only state court to issue a reasoned decision addressing this claim of constitutional error, which was raised generally in counsel's appellate brief and specifically by petitioner in a *pro se* pleading filed on direct appeal following his second trial.

In *Smith II*, the state appellate court first rejected the general claim asserted

---

[10] Prior to the re-sentencing hearing, petitioner's counsel apparently filed a motion "to dismiss all charges for prosecutorial misconduct;" a motion to dismiss Counts 2, 3, 8 and 9; and a sentencing memorandum. (*Id.*, Exs. H-J). Petitioner states that the court "summarily overruled" the motions to dismiss at the re-sentencing hearing. (*Id.*, Brief, pp. 3-4).

[11] No mention was made in the August 2008 re-sentencing order of the one-year consecutive prison term previously imposed following the second trial on petitioner's conviction under Count 11 for having weapons while under disability.

by appellate counsel that the Double Jeopardy Clause prevented petitioner's retrial after his convictions at the first trial were reversed. (*See* Doc. 62, Ex. 6, p. 22). The court reasoned:

> A defendant's . . . rights are not violated under the successive-prosecution prong [of the Double Jeopardy Clause] when he is retried after a reversal and remand, as long as the appellate court did not reverse on the basis of insufficient evidence. Thus, we reject Smith's argument that the Double Jeopardy Clause prevented the state from retrying him because his convictions were reversed on appeal. Likewise, we reject Smith's argument that he could not have been retried on some of the felonious-assault charges because the original judge had merged those offenses into other convictions for purposes of sentencing. Where, as here, an appellate court awards a new trial on the basis that the defendant was denied the right to represent himself, the defendant stands accused as if there had been no previous trial. Smith was never acquitted of those crimes, so he could be retried for those offenses.

(*Id.*) (footnote citations omitted).

Later in the *Smith II* decision, the court of appeals also considered the specific claim raised by petitioner in his *pro se* pleading; the court overruled the assignment of error, reasoning in pertinent part as follows:

> In his twelfth assignment of error, Smith argues that the trial court erred in overruling his motion to dismiss the indictment. On remand, Smith had moved to dismiss the indictment, claiming that the prosecutor had committed misconduct in his first trial and that his retrial under these circumstances was barred under the Double Jeopardy Clause. Smith's argument is without merit for two reasons.
>
> First, as we have discussed under the third assignment of error, a successful appeal of a conviction generally prevents a plea of double jeopardy on remand under the federal constitution or state constitution. Some courts have found double jeopardy to bar a successive prosecution where reversal after an appeal is based upon prosecutorial misconduct. But the Ohio Supreme Court has declined to adopt this exception to the general rule.

11

Second, although this court had warned the prosecutor that his misconduct in the first trial may have served as grounds for reversal, the misconduct was not the basis for the reversal. We reversed Smith's convictions because the trial court had denied Smith his right to self-representation.

Smith's argument that the trial court erred in overruling his motion to dismiss the indictment is meritless for both of those reasons.

*(Id.,* pp. 38-39) (footnote citations omitted).

In the usual case, a federal habeas petitioner is not entitled to relief unless the state court's adjudication of his constitutional claim resulted in a decision that (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the United States Supreme Court, or (2) was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *See* 28 U.S.C. § 2254(d); *see also Williams v. Taylor,* 529 U.S. 362, 402-03 (2000) (O'Connor, J., writing for majority on this issue); *Harris v. Stovall,* 212 F.3d 940, 942 (6th Cir. 2000), *cert. denied,* 532 U.S. 947 (2001); *Harpster v. Ohio,* 128 F.3d 322, 326 (6th Cir. 1997), *cert. denied,* 522 U.S. 1112 (1998).

A state court decision is "contrary to" clearly established federal law as determined by the Supreme Court under § 2254(d)(1) if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams,* 529 U.S. at 405-06 (O'Connor, J.); *Harris,* 212 F.3d at 942. An "unreasonable application" of Supreme Court precedent occurs (1) if the state court identifies the correct legal standard but unreasonably applies it to the facts of the case, or (2) if the state court either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply. *Williams,* 529 U.S. at 407-08 (O'Connor, J.).

Under § 2254(d)(1)'s "unreasonable application" clause, a federal habeas corpus court "may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411 (O'Connor, J.); *see also Bell v. Cone,* 535 U.S.

685, 694 (2002); *McGhee v. Yukins,* 229 F.3d 506, 510 (6th Cir. 2000); *Harris,* 212 F.3d at 942.

The reasonableness inquiry is an objective one; it does not involve a subjective inquiry into whether or not reasonable jurists would all agree that the state court's application was unreasonable. *Williams,* 529 U.S. at 409-10 (O'Connor, J.); *see also Washington v. Hofbauer,* 228 F.3d 689, 698 (6th Cir. 2000); *Harris,* 212 F.3d at 942-43. Moreover, the writ may issue only if the application is objectively unreasonable "in light of the holdings, as opposed to the dicta, of the Supreme Court's decisions as of the time of the relevant state court decision." *McGhee,* 229 F.3d at 510, 512 (citing *Williams,* 529 U.S. at 412).

The Double Jeopardy Clause of the Fifth Amendment provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Constit. amend. V. This guarantee, made applicable to the states through the Fourteenth Amendment, *Benton v. Maryland,* 395 U.S. 784, 794 (1969), protects against "a second prosecution for the same offense after conviction or acquittal." *Palazzolo v. Gorcyca,* 244 F.3d 512, 516 (6th Cir.) (citing *Ohio v. Johnson,* 467 U.S. 493, 498 (1984), and *North Carolina v. Pearce,* 395 U.S. 711, 717 (1969), *overruled on other grounds by Alabama v. Smith,* 490 U.S. 794 (1989)), *cert. denied,* 534 U.S. 828 (2001).

As the Ohio Court of Appeals apparently recognized in the instant case, it is well-settled that "the Double Jeopardy Clause's general prohibition against successive prosecutions does not prevent the government from retrying a defendant who succeeds in getting his first conviction set aside, through direct appeal or collateral attack, because of some error in the proceedings leading to conviction." *Lockhart v. Nelson,* 488 U.S. 33, 38 (1988) (citing *Ball v. United States,* 163 U.S. 662 (1896), and *United States v. Tateo,* 377 U.S. 463 (1964)). The Supreme Court has explained:

Corresponding to the right of an accused to be given a fair trial is the societal interest in punishing one whose guilt is clear after he has obtained such a trial. It would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction.

13

*Id.* (quoting *Tateo,* 377 U.S. at 466).

The Supreme Court has recognized an exception to this general rule enunciated by the Supreme Court in *Lockhart* in cases where the defendant's conviction is reversed by an appellate court on the sole ground that the evidence was insufficient to sustain the jury's verdict. *Id.* at 39 (citing *Burks v. United States,* 437 U.S. 1, 17-18 (1978)). This exception is premised on the principle that "an appellate court's reversal for insufficiency of the evidence is in effect a determination that the government's case against the defendant was so lacking that the trial court should have entered a judgment of acquittal, rather than submitting the case to the jury." *Id.* (citing *Burks,* 437 U.S. at 16-17). The Court has reasoned that "[b]ecause the Double Jeopardy Clause affords the defendant who obtains a judgment of acquittal at the trial level absolute immunity from further prosecution for the same offense, it ought to do the same for the defendant who obtains an appellate determination that the trial court *should* have entered a judgment of acquittal." *Id.* (citing *Burks,* 437 U.S. at 10-11) (emphasis in original).

The Supreme Court also has held that the Double Jeopardy Clause may apply to prevent a retrial following a declaration of mistrial requested by the defendant for prosecutorial misconduct. *Oregon v. Kennedy,* 456 U.S. 667 (1982). In such cases, constitutional protections come into play only under a "narrow exception" created for cases involving "governmental actions intended to provoke mistrial requests" by defendants. *Id.* at 673-74. Therefore, even in cases where prosecutorial error was of a degree sufficient to warrant a mistrial, double jeopardy will not bar retrial at the defendant's behest absent a showing of *intent* on the part of the prosecutor to abort the trial by way of "goad[ing]" or provoking the defendant into moving for a mistrial. *Id.* at 676 (citing *United States v. Dinitz,* 424 U.S. 600, 609 (1976)); *see also United States v. White,* 914 F.2d 747, 752 (6th Cir.

14

1990).[12]

The Supreme Court has not extended its holding in *Kennedy* beyond the context of mistrials to post-conviction reversals of convictions based on prosecutorial misconduct. As the Ohio Court of Appeals noted in *Smith II*, the Second Circuit suggested in dicta in *United States v. Wallach,* 979 F.2d 912, 916 (2nd Cir. 1992), *cert. denied,* 508 U.S. 939 (1993), that an extension of *Kennedy* beyond the mistrial context may be warranted in limited circumstances, but "only where the misconduct of the prosecutor is undertaken, not simply to prevent an

---

[12] The requirement of showing that the prosecutor intended to provoke a mistrial presents a high hurdle for a defendant to overcome. *United States v. Neufeld,* 949 F.Supp. 555, 559 (S.D. Ohio 1996) (and numerous cases cited therein), *aff'd,* 149 F.3d 1185 (6th Cir.), *cert. denied,* 525 U.S. 1020 (1998). Following the Supreme Court's decision in *Kennedy,* the federal circuit courts, including the Sixth Circuit, have been reluctant to find the requisite intent on the part of the prosecutor to subvert the protections afforded by the Double Jeopardy Clause. *See Hampton v. Moore,* No. 2:07cv747, 2008 WL 4137905, at *11 (S.D. Ohio Aug. 28, 2008) (King, M.J.) (Report & Recommendation) (unpublished), citing following circuit court decisions: *United States v. Koubriti,* 509 F.3d 746, 749 (6th Cir. 2007), *cert. denied,* 128 S.Ct. 1915 (2008); *United States v. Thomas,* 728 F.2d 313, 318 (6th Cir. 1984); *United States v. Curry,* 328 F.3d 970, 973 (8th Cir. 2003) (affirming decision that retrial was not barred by post-trial grant of defendant's mid-trial motion for mistrial, because the prosecutor's misconduct in closing argument and in withholding material impeachment evidence was not intended to goad defendant to request a mistrial); *United States v. Strickland,* 245 F.3d 368, 384 (4th Cir.) (government's concealment of discoverable materials held not intended to provoke mistrial), *cert. denied,* 534 U.S. 894, 930 (2001); *Greyson v. Kellam,* 937 F.2d 1409 (9th Cir. 1991) (no double jeopardy bar to retrial where misconduct showed the prosecutor's desire to *convict*, and not an intent to provoke defendant into moving for a mistrial). As Judge Posner of the Seventh Circuit explained in *United States v. Oseni,* 996 F.2d 186, 188 (7th Cir. 1993) (citations omitted and emphasis added):

> The requirement of intent is critical, and easily misunderstood. The fact that the government blunders at trial and the blunder precipitates a successful motion for mistrial does not bar a retrial. Yet the blunder will almost always be intentional–the product of a deliberate action, not of a mere slip of the tongue. A prosecutor who in closing argument comments improperly on the defendant's failure to have taken the stand, thus precipitating a mistrial or a reversal on appeal, is no doubt speaking deliberately, though his judgment may be fogged by the heat of combat. *But unless he is trying to abort the trial, his misconduct will not bar a retrial. It doesn't even matter that he knows that he is acting improperly, provided that his aim is to get a conviction. The only relevant intent is intent to terminate the trial, not intent to prevail at this trial by impermissible means.*

15

acquittal, but to prevent an acquittal that the prosecutor believed at the time was likely to occur in the absence of his misconduct."

Most courts have refused to extend *Kennedy* to cases such as this, where no mistrial was declared. *See, e.g., United States v. Koubriti,* 435 F.Supp.2d 666, 673-75 (E.D. Mich. 2006) (citing *United States v. Davis,* 873 F.2d 900, 906 (6th Cir.), *cert. denied,* 493 U.S. 923 (1989)), *aff'd,* 509 F.3d 746, 749-50 (6th Cir. 2007), *cert. denied,* 128 S.Ct. 1915 (2008); *Sanborn v. Parker,* No. 99-678-C, 2007 WL 495202, at *33 (W.D. Ky. Feb. 14, 2007) (unpublished) (and cases cited therein); *see also United States v. Lewis,* 368 F.3d 1102, 1108 (9th Cir. 2004) (and cases cited therein), *cert. denied,* 543 U.S. 1053 (2005); *United States v. McAleer,* 138 F.3d 852, 856 (10th Cir.) (holding that *Kennedy* exception for prosecutorial misconduct did not apply without the declaration of a mistrial because the defendants "were not deprived of their 'valued right' to have their case submitted to the first jury, and perhaps have the dispute end with an acquittal"), *cert. denied,* 525 U.S. 854 (1998).[13]

In this case, as the Ohio Court of Appeals pointed out in *Smith II,* petitioner's convictions in the first trial were not reversed on the basis of prosecutorial misconduct or because the evidence was insufficient, but because petitioner had been denied his right to self-representation. Although in so ruling, the court of appeals stated that the prosecutor's actions "*may* have provided a basis for reversal and the order of a new trial," the court did not hold that the alleged misconduct actually amounted to reversible error. Most importantly, the court did not express any concern about a possible double jeopardy violation stemming from the misconduct, and indeed, implied that the alleged improprieties at most constituted grounds for a new trial.

Moreover, even assuming, *arguendo,* petitioner's convictions were reversed because of the prosecutor's misconduct at the first trial, in the absence of clearly-established Supreme Court precedents extending *Kennedy* beyond the mistrial context, the Ohio courts' determination that petitioner's retrial did not violate the successive-prosecution prong of the Double Jeopardy Clause neither was contrary to nor involved an unreasonable application of applicable Supreme Court case-law. *Cf. Sanborn, supra,* 2007 WL 495202, at *33. In any event, no showing has been

---

[13] *Cf. Walls v. Hemingway,* 27 Fed.Appx. 553, 555 (6th Cir. Dec. 12, 2001) (not published in Federal Reporter) (holding that the defendant's reliance on *Kennedy* was "misplaced because no mistrial was declared in this case").

16

made that the prosecutor engaged in any impropriety at the first trial in an effort to abort those proceedings. Indeed, given the jury's verdicts of guilt at the first trial on all counts, including the lesser charge of murder, it would have been unreasonable for the Court of Appeals to have found the prosecutor was trying to do anything more than obtain a conviction by any means necessary.

Therefore, petitioner is not entitled to relief based on his contention that he falls within an exception to the general rule enunciated in *Lockhart* and, thus, that the Double Jeopardy Clause barred his retrial after he succeeded in getting his first conviction set aside on direct appeal.

In addition, petitioner is unable to prevail on any claim that a double jeopardy violation occurred when the trial court "unmerged" the counts that had been merged for sentencing purposes at the first trial and retried petitioner on all those counts at his second trial. Contrary to petitioner's contention, petitioner was retried only on charges that resulted in guilty verdicts at the first trial; those charges included the counts that were merged at sentencing for the sole purpose of preventing the imposition of multiple punishments for allied offenses of similar import. (*See* Doc. 62, Ex. 2).

The Ohio Court of Appeals reasonably determined in *Smith II* that petitioner could be properly retried on all charges that had not resulted in an acquittal at the first trial, including counts that were merged for sentencing purposes only. (*See id.*, Ex. 6, pp. 22). As the court explained in *Smith III*:

In *Smith II*, this court held that "[w]here, as here, an appellate court awards a new trial on the basis that the defendant was denied the right to represent himself, the defendant stands accused as if there had been no previous trial."

In *Smith I*, we determined that the first trial was not a fair trial. And after we reversed, Smith's convictions no longer existed. If the convictions ceased to exist, then the mergers no longer existed either. Whether the first trial court had merged the felonious-assault convictions was irrelevant because Smith had not been correctly convicted of any of the counts at his first trial, and the mergers disappeared when the convictions went away.

17

(Doc. 72, Ex. A, pp. 5-6) (footnote omitted).

Finally, in his supplemental memorandum (*see* Doc. 74), petitioner raises an additional argument that the Double Jeopardy Clause prohibited his multiple punishments for the same offense. Petitioner did not assert this claim as a ground for relief in the instant petition, which was filed before the second trial commenced; nor could he have raised such a claim herein, because the facts giving rise to the claim arose *after* petitioner was convicted and the sentences were imposed at the close of the second trial.

This claim is based on a Double Jeopardy Clause guarantee that is separate from the protection afforded defendants against successive prosecutions for the same offense. The clause not only protects against successive prosecutions, but also against "multiple punishments for the same offense" imposed in a single proceeding. *See Missouri v. Hunter,* 459 U.S. 359, 366 (1983) (quoting *Pearce,* 395 U.S. at 717).

In the "multiple punishment" context, the protection is limited to ensuring that "sentencing courts do not exceed, by the device of multiple punishments, the limits prescribed by the legislative branch of government, in which lies the substantive power to define crimes and prescribe punishments." *Jones v. Thomas,* 491 U.S. 376, 381 (1989); *see also Johnson,* 467 U.S. at 499; *Brown v. Ohio,* 432 U.S. 161, 165 (1977). Therefore, "the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." *Johnson,* 467 U.S. at 499; *see also Palmer v. Haviland,* 273 Fed.Appx. 480, 484 (6th Cir. Apr. 9, 2008) (not published in Federal Reporter) (unlike other double jeopardy protections prohibiting re-prosecution for the same offense, "the multiple punishments category of double jeopardy is primarily one of legislative intent").

In Ohio, the legislature's intent in the multiple punishment area may be discerned from the state multiple-count statute–Ohio Rev. Code § 2941.25. *See State v. Rance,* 710 N.E.2d 699, 635 (Ohio 1999); *see also Jones v. Baker,* 35 F.3d 566 (table), Nos. 93-3589, 93-3625, 1994 WL 464191, at **3 (6th Cir. Aug. 26, 1994) (unpublished), *cert. denied,* 513 U.S. 1164 (1995); *Woodfork v. Russell,* 19 F.3d 20 (table), No. 92-4301, 1994 WL 56933 (6th Cir. Feb. 24, 1994) (unpublished). The statute provides:

(A) Where the same conduct by defendant can be construed to

18

constitute two or more allied offenses of similar import, the indictment
or information may contain counts for all such offenses, but the
defendant may be convicted of only one.

(B) Where the defendant's conduct constitutes two or more offenses of
dissimilar import, or where his conduct results in two or more offenses
of the same or similar kind committed separately or with a separate
animus as to each, the indictment or information may contain counts
for all such offenses, and the defendant may be convicted of all of
them.

The Supreme Court of Ohio has held that this provision permits the trial court
to convict and impose cumulative sentences for two or more offenses arising from
the same incident if the offenses (1) are of dissimilar import; or (2) are of similar
import, but were committed separately or with separate animus. *Rance,* 710 N.E.2d
at 636; *see also State v. Cabrales,* 886 N.E.2d 181, 184-85 (Ohio 2008).

On direct appeal in both *Smith II* and *Smith III,* petitioner raised the double-
jeopardy "multiple punishment" claim in challenging the consecutive sentences that
were imposed on duplicative felonious assault counts that stemmed from a single
criminal act. (*See* Doc. 62, Exs. 4, 28). The Ohio Court of Appeals initially
rejected the claim in *Smith II,* based on its determination that the Ohio legislature
had provided that petitioner "could be sentenced to separate cumulative sentences
for each felonious assault" even though some of the violations stemmed from a
single criminal act against one victim. (*See id.,* Ex. 6, p. 23).

However, in *Smith III*, the court of appeals reversed itself. The court
concluded that because of the state supreme court's recent decision in *Cabrales*
clarifying the legislature's intent with respect to "allied offenses of similar import,"
the trial court erred when it re-sentenced petitioner on remand from *Smith II* to
consecutive terms of imprisonment "on four felonious-assault counts when there
were only two acts and two victims." (*See* Doc. 72, Ex. A, pp. 6-8). The matter
was remanded again for re-sentencing "so that only one felonious-assault sentence
is imposed for each victim." (*Id.,* p. 8).

On remand from *Smith III*, the trial court rectified the error by re-sentencing
petitioner on August 6, 2008 to only two consecutive prison terms for the felonious
assault offenses separately committed against victims Steven Franklin and Andre

Ridley. (*See id.,* Ex. L). Therefore, to the extent petitioner's additional "multiple punishment" double-jeopardy claim is even cognizable in this proceeding, at this juncture, it has been rendered moot.[14]

Accordingly, petitioner has not demonstrated that he is entitled to habeas corpus relief based on his claims that his rights under the Double Jeopardy Clause were violated by (1) his retrial on criminal charges after his first conviction was reversed; or (2) the imposition of consecutive sentences on petitioner's felonious assault convictions, as corrected on August 6, 2008 on remand for re-sentencing under *Smith III.* Therefore, petitioner's pretrial petition for writ of habeas corpus, which was filed pursuant to 28 U.S.C. § 2254 before the second jury trial commenced, should be **DENIED** with prejudice.

## IT IS THEREFORE RECOMMENDED THAT:

1. Petitioner's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** with prejudice.

2. A certificate of appealability should not issue because reasonable jurists would not find it debatable whether petitioner's double jeopardy claims should have been resolved in a different manner or, alternatively, whether the issues presented are "adequate to deserve encouragement to proceed further." *Miller v. El-Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel,* 529 U.S. 473, 484 (2000)); *see also* 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).

3. With respect to any application by petitioner to proceed on appeal *in forma pauperis,* the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that an appeal of any Order adopting this Report and Recommendation would not be taken in "good faith," and, therefore, should **DENY** petitioner leave to proceed on appeal *in forma pauperis* upon a showing of financial necessity. *See* Fed. R. App. P. 24(a);

---

[14] It is noted that the State has filed an appeal challenging the Ohio Court of Appeals' decision in *Smith III,* which is still pending before the Supreme Court of Ohio. However, the double-jeopardy "multiple punishment" issue could only be revived as no longer moot only if petitioner were re-sentenced yet again to more than two consecutive prison terms for the felonious assault offenses committed against Franklin and Ridley, upon remand from any decision by the state supreme court affecting *Smith III.*

*Kincade v. Sparkman,* 117 F.3d 949, 952 (6th Cir. 1997).

Date: __1/5/09__
<sub>cbc</sub>

Timothy S. Hogan
United States Magistrate Judge

Garey Smith,
    Petitioner

vs

                      Case No. 1:04cv579
                      (Weber, S.J.; Hogan, M.J.)

Warden, Southern Ohio
Correctional Facility,
    Respondent

# NOTICE

Attached hereto is a Report and Recommendation issued by the Honorable Timothy S. Hogan, United States Magistrate Judge, in the above-entitled habeas corpus action. Pursuant to Fed. R. Civ. P. 72(b), which may be applied in this action under Rules 1 and 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, any party may object to the Magistrate Judge's Report and Recommendation within ten (10) days after being served with a copy thereof. Such party shall file with the Clerk of Court and serve on all other parties written objections to the Report and Recommendation, specifically identifying the portion(s) of the proposed findings, recommendations, or report objected to, together with a memorandum of law setting forth the basis for such objection(s). Any response by an opposing party to the written objections shall be filed within ten (10) days after the opposing party has been served with the objections. *See* Fed. R. Civ. P. 72(b). A party's failure to make objections in accordance with the procedure outlined above may result in a forfeiture of his rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).